# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **JEFFREY KEEN,**<br>785 Poteet Road<br>Wirtz, Virginia 24184<br><br>    Plaintiff,<br><br>    v.<br><br>**SELBRO, INC.**<br>Serve: James A. Seliga,<br>       Registered Agent<br>       2430 B S County Road, 308<br>       Bellevue, Ohio 44811<br><br>    Defendant. | **CASE NO.:** 722CV00572<br><br>**JURY TRIAL DEMANDED** |

## **COMPLAINT**

Plaintiff, Jeffrey Keen, by and through undersigned counsel, hereby demands judgment against the above-named Defendant, and states as follows by way of complaint:

## **PARTIES**

1.     Jeffrey Keen is a resident of the Commonwealth of Virginia, residing at 1416 Kingston Road, Wirtz, Virginia, 24184.

2.     At all times relevant hereto, Jeffrey Keen, was employed by and working within the scope of his employment for Ruggieri Lawns, LLC (hereinafter "Ruggieri Lawns"), located at 929 Lakewood Forest Road, Moneta, Virginia 24121.

3. Defendant, Selbro, Inc., (hereinafter "Selbro") is a corporation organized and existing under the laws of the State of Ohio with a principal place of business located at 555 Goodrich Road, Bellevue, Ohio, 44811.

4. Selbro designs, manufactures, distributes and sells sulkies that are intended to be attached to lawn mowers, including the Land Shark Pro-Sulky, and component parts which it offers for sale and/or distributes throughout the United States, including to businesses and dealers located in the Commonwealth of Virginia.

5. Selbro designed, manufactured, tested, inspected, marketed, sold, and delivered, and otherwise put into the stream of commerce a Land Shark Pro-Sulky SR #240283.

6. Selbro manufactured and shipped a Land Shark Pro-Sulky SR #240283 (hereinafter "the Product") to a dealer in Bedford County, Virginia with the knowledge and expectation that the sulky would be used by a Virginia business and/or residents and by individuals who were citizens of the Commonwealth of Virginia.

7. Selbro regularly manufactures sulkies which it distributes throughout the United States, including to businesses located in the Commonwealth of Virginia.

8. On or about April 10, 2018, the Product was sold to Ruggieri Lawns, 929 Lakewood Forest Road, Moneta, Virginia, 24121.

## JURISDICTION AND VENUE

9. Jurisdiction is based on 28 U.S.C. § 1332(a)(1) as this action involves a controversy between citizens of different states and the amount in controversy exceeds One Hundred thousand dollars ($75,000.00), exclusive of interest and costs.

10. Venue is proper in this district based on 28 U.S.C. § 1391(a) in that the Western District of Virginia is where the accident occurred and where the defendant is subject to personal jurisdiction.

## **FACTS**

11. Plaintiff incorporates herein by reference the foregoing paragraphs as though more fully set forth at length.

12. Selbro manufactured and sold the Product with the intention that it would be attached to powered lawn mowers for the operators of such lawn mowers to stand upon and ride during the normal anticipated uses of such lawn mowers, including grass cutting operations.

13. At the time it placed the Product into the stream of commerce in Virginia, Selbro knew or should have known that the Product was unsafe and unreasonably dangerous in that Selbro designed, manufactured, and sold the Product with an unrounded and unguarded metal corner edge.

14. On or about October 20, 2020, Jeffrey Keen was working in the course and scope of his employment with Ruggieri Lawns, performing landscaping services on various properties in Moneta, Virginia and the surrounding area.

15. While cutting grass, on or about October 20, 2020, Jeffrey Keen was operating a Toro 20 KAW T2-hydro floating lawnmower with the Product attached thereto.

16. On or about October 20, 2020, while engaged in landscaping services and operating the Toro 20 KAW T2-hydro floating lawnmower with the Product attached thereto and standing on the Product, Jeffrey Keen was unable to maintain his balance and fell backward, at which time his left ankle and foot inadvertently came into contact with the unrounded and unguarded sheet metal corner edge of the Product.

17. The unrounded and unguarded metal corner edge of the Product sliced through Jeffrey Keen's work boot and into his left foot.

18. As a result of the forgoing incident, Jeffrey Keen sustained severe and permanent injuries, including a fracture of the left calcaneus, partial laceration of the Achilles tendon, severe left foot and ankle laceration, and infection, among other serious and permanent injuries.

19. As a result of the foregoing incident, Jeffrey Keen has undergone medical treatment and surgical procedures for his injuries, has incurred medical bills and will incur additional medical bills in the future for the treatment of his injuries.

20. As a result of the foregoing incident, Jeffrey Keen was disabled from work and has sustained lost wages and will continue to be disabled in the future and may incur additional lost wages in the future and a loss of future earning capacity.

21. As a result of the foregoing incident, Jeffrey Keen has endured extreme pain and suffering and may continue to experience pain and suffering in the future.

22. As a result of the foregoing incident, Jeffrey Keen suffered a loss of life's enjoyment and may suffer further loss of life enjoyment in the future.

23. As a result of the foregoing incident, Jeffrey Keen's left foot and ankle are permanently scarred, disfigured, and he has permanently altered his gait that will likely lead to further injury and disability in the future.

### COUNT I
### NEGLIGENCE
### JEFFREY KEEN V. SELBRO, INC.

24. Plaintiff restates and incorporates herein by reference all the foregoing paragraphs as though more fully set forth at length.

25. Selbro designed, manufactured, tested, inspected, marketed, sold, delivered, and otherwise put the Product into the stream of commerce.

26. Selbro negligently designed, manufactured, and sold the Product, such that it was defective, inherently and unreasonably dangerous, unsafe, unsuitable for use, not of merchantable quality, and not fit for its intended uses or for the general and particular purposes for which it was designed, manufactured, marketed, and sold, and as such was likely to cause injury.

27. The incident described above was caused solely by the negligent and careless acts of Selbro, including, but not limited to the following:

   a. failing to design, manufacture, and/or sell the Product in a manner that would allow it to be operated safely during its normal and/or anticipated use and operation;

   b. designing, manufacturing and/or selling the Product with an improperly sized and shaped standing surface such that it rendered the Product inherently unstable, did not allow for the user to assume an appropriate and stable body stance while the Product was in motion, and was inadequate for proper and stable operator balance such that a user was likely to be caused to lose balance, fall, or step off the Product during its normal and anticipated use and operation;

   c. designing, manufacturing and/or selling the Product with an unrounded and unguarded sheet metal corner edge that was likely to cause serious injury when coming into contact with a person;

   d. failing to provide any instructions or warnings concerning the hazardous nature of the unrounded and unguarded metal corner edge on the bottom of the sulky;

   e. designing manufacturing and/or selling the Product without warnings and instructions concerning the size and shape and location of the unrounded and

unguarded metal corner edge and narrow standing surface whereby an operator was exposed to hazardous conditions posed by the moving unrounded and unguarded metal corner on the Product;

f. designing manufacturing, and/or selling the Product without warnings and instructions that the Product lacked essential safeguards to prevent operators from being injured;

g. designing, manufacturing, and/or selling the Product such that it deviated from standard industry design in that it featured an unguarded and unrounded metal corner edge across the bottom of the Product;

h. designing, manufacturing, and/or selling the Product such that it deviated from standard industry design in that features an excessively narrow and unable standing surface such that it was likely to cause unstable displacement of the operator during normal operation;

i. failing to provide adequate instructions and warnings concerning the substantial risk of serious harm that could result during the normal operation of the Product.

28. As a further result of the negligence and carelessness of Selbro, the Product did not comply with industry customs, procedures, and safety standards and as such was defective, inherently and unreasonably dangerous, unsafe, unsuitable for use, not of merchantable quality, and not fit for its intended uses or for the general and particular purposes for which it was designed, manufactured, marketed, and sold.

29. Selbro negligently instructed as to the use, operation, maintenance, and service of the Product, negligently failed to provide complete and adequate warnings as to the use,

operation, maintenance, and service of the Product, and negligently failed to provide complete and adequate warnings as to the consequences of falling or stepping off of the sulky platform.

30. At the time the Product left the hands of Selbro, the Product was defective, unreasonably and inherently unstable, dangerous, and not safe or suitable for use by the plaintiff.

31. As a direct and proximate result of the negligence and carelessness of Selbro, Jeffrey Keen's left ankle and foot were lacerated by the defective unrounded and unguarded metal edge of the Product, ultimately resulting in serious injuries and damages, as detailed above.

32. As a further direct and proximate result of the negligence and carelessness of Selbro, Jeffrey Keen was caused to suffer serious and permanent injuries as detailed above; has suffered scarring and disfigurement; has suffered and will suffer in the future pain of the body and mind; has suffered disfigurement and deformity and associated humiliation or embarrassment; has suffered and will suffer inconvenience; has incurred and will incur in the future medical and related expenses; has been deprived of earnings; and has suffered and will suffer in the future other damages.

33. Plaintiff respectfully demands a trial by jury.

WHEREFORE, with respect to each of the Counts set forth herein, Plaintiff Jeffrey Keen demands judgment against the defendant, in an amount of $5,000,000, plus pre-judgment and post-judgment interest, and for costs herein expended.

## COUNT II
## BREACH OF IMPLIED WARRANTY
## JEFFREY KEEN V. SELBRO, INC.

34. Plaintiff incorporates herein by reference the foregoing paragraphs as though more fully set forth at length.

35. Selbro impliedly warranted that the Product was not defective, unreasonably or inherently dangerous, that it was safe and suitable for ordinary and foreseeable use, that it was of merchantable quality, and that it was fit for its intended use and for the general and particular purposes for which it was designed, manufactured, tested, inspected, marketed, distributed, delivered, and sold.

36. In using the Product, Jeffrey Keen reasonably relied upon Defendant Selbro's skill and judgment and the implied warranty of merchantability made by the defendant.

37. The Product as designed, manufactured, and sold by Selbro was defective, unreasonably and inherently dangerous, not safe or suitable for use by Jeffrey Keen, not of merchantable quality, not fit for its intended uses or for the general and particular purposes for which it was designed, manufactured, tested, inspected, marketed, distributed, delivered, and sold, and did not comply with other implied warranties made by Selbro as prescribed by law or as the evidence may establish.

38. As a direct and proximate result of Selbro's breaches of implied warranties, while standing on the Product, and operating the Product in its normal and anticipated use the Product was unstable and Jeffrey Keen was unable to maintain his balance and fell backward, at which time his left ankle and foot were lacerated by the defective and unreasonably dangerous, unrounded and unguarded metal corner edge of the Product, ultimately resulting in serious and permanent injuries and damages, as detailed above.

39. As a further direct and proximate result of Selbro's breaches of implied warranties, Jeffrey Keen was caused to suffer serious and permanent injuries; has suffered and will suffer in the future pain of the body and mind; has suffered disfigurement and scarring and associated humiliation or embarrassment; has suffered and will suffer inconvenience; has

incurred and will incur in the future medical and related expenses; has been deprived of earnings and earning capacity; and has suffered and will suffer in the future other damages.

WHEREFORE, with respect to each of the Counts set forth herein, Plaintiff Jeffrey Keen demands judgment against the defendant, in an amount of $5,000,000, plus pre-judgment and post-judgment interest, and for costs herein expended.

**PLAINTIFF RESPECTFULLY DEMANDS A TRIAL BY JURY.**


JEFFREY KEEN

By: /s/ William W. Tunner
William W. Tunner, Esq. (VSB #38358)
Peter S. Askin, Esq. (VSB #93371)
Thompson McMullan, P.C.
100 Shockoe Slip, Third Floor
Richmond, VA 23219-4140
Phone: (804) 649-7545
Facsimile: (804) 780-1813
wtunner@t-mlaw.com
paskin@t-mlaw.com
*Counsel for Jeffrey Keen*